EDWARDS *v.* UNITED STATES.

No. 790.   Argued April 11, 1932.—Decided May 31, 1932.

*Attorney General Mitchell,* with whom *Solicitor General Thacher, Assistant Attorney General Rugg,* and *Mr.*

*Erwin N. Griswold* were on the brief, for the United States.

484

*Mr. M. Walton Hendry,* for Edwards,

*Mr. Hatton W. Sumners,* by leave of Court, argued the cause on behalf of the Judiciary Committee of the House of Representatives, as *amicus curiae.*

MR. CHIEF JUSTICE HUGHES delivered the opinion of the Court.

Private Bill No. 510 of the 71st Congress (c. 595, 46 Stat. 2163) provided that the Court of Claims should have jurisdiction to adjudicate a certain claim of the plaintiff against the Government. The court states that the bill was approved by the President on March 5, 1931, that is,

within ten days (Sundays excepted) after it was presented to him, but after the final adjournment of the Congress which passed it. The following question is certified:

" Did the Act of March 5, 1931 (46 Stat. 2163), become law when it was approved by the President on March 5, 1931, after the final adjournment on March 4, 1931, of the Congress which had passed it? "

No difference of opinion between the parties as to the validity of the measure, as thus approved, is disclosed in the argument at bar. The President approved the bill upon the advice of the Attorney General (36 Op. A. G. 403) who, in accord with the plaintiff, submits that the certified question should be answered in the affirmative. In view of the opinion at one time expressed by the Judiciary Committee of the House of Representatives (H. R. Report No. 108, 38th Cong., 1st sess., June 11, 1864), the Attorney General advised the Judiciary Committee of that House of the pendency of the present cause, and we granted to Mr. Sumners, the Chairman of that Committee, at his request, leave to appear as *amicus curiae*. He has stated to the Court that the Judiciary Committee of the House of Representatives is now of the opinion that the President has the power asserted and he has presented an argument in support of the President's action. While no contention to the contrary has been urged upon us in the instant case, our attention has been directed to opposing views strongly held in the past, and these—no less than those now advanced—we have carefully considered in reaching our conclusion.

The question arises under the second paragraph of Section 7 of Article I of the Constitution, which reads as follows:

" Every Bill which shall have passed the House of Representatives and the Senate, shall, before it become a Law, be presented to the President of the United States; if he approve he shall sign it, but if not he shall return it,

with his Objections to that House in which it shall have originated, who shall enter the Objections at large on their Journal, and proceed to reconsider it. If after such Reconsideration two thirds of that House shall agree to pass the Bill, it shall be sent, together with the Objections, to the other House, by which it shall likewise be reconsidered, and if approved by two thirds of that House, it shall become a Law. . . . If any Bill shall not be returned by the President within ten Days (Sundays excepted) after it shall have been presented to him, the Same shall be a Law, in like Manner as if he had signed it, unless the Congress by their Adjournment prevent its Return, in which Case it shall not be a Law."

The last sentence of this provision clearly indicates two definite and controlling purposes: *First.* To insure promptness and to safeguard the opportunity of the Congress for reconsideration of bills which the President disapproves; hence, the fixing of a time limit so that the status of measures shall not be held indefinitely in abeyance through inaction on the part of the President. *Second.* To safeguard the opportunity of the President to consider all bills presented to him, so that it may not be destroyed by the adjournment of the Congress during the time allowed to the President for that purpose. As this Court said in *The Pocket Veto Case,* 279 U. S. 655, 677, 678: " The power thus conferred upon the President cannot be narrowed or cut down by Congress, nor the time within which it is to be exercised, lessened, directly or indirectly." The constitutional provision is explicit as to the consequences in case the bill is not signed by the President within the time fixed. The bill then becomes a law, unless the Congress by adjournment has prevented the return of the bill, and, in the latter event, it is not to be a law. But the provision is not explicit as to the consequence in case the bill is approved by the President

within the time fixed and in the meantime the Congress has adjourned.

The proceedings and debates of the Constitutional Convention throw no light upon this question. See *The Pocket Veto Case, supra,* at p. 675. Nor has the provision received a practical construction so positive and consistent as to be determinative. The general practice of Presidents, in being present at the Capitol for the purpose of signing bills during the closing hours of the sessions of the Congress, has indicated the existence of doubt and the desire to avoid controversy.[1] It appears that the question was raised during the administration of President Monroe, and, in view of a difference of opinion among his advisers, the bill in question was not signed.[2] President

---

[1] See Memoirs of John Quincy Adams (1875), vol. 7, pp. 233, 234.

[2] John Quincy Adams gives the following account of this incident:

" Another question discussed was, whether the President could now sign the Act concerning the Florida wreckers, which was examined and actually announced to the House as having been signed, but accidentally, among forty or fifty other Acts approved the last evening before the close of the session, remained without his signature. Could the President sign an Act, Congress not being in session? Wirt thought he could. So did I. The article of the Constitution concerning the signature of the President to Acts of Congress was read and analyzed. Nothing in it requiring that the President should sign while Congress are in session.

" Calhoun said that uniform practice had established a practical construction of the Constitution.

" I observed that the practice had merely grown out of the precedents in the British Parliament. But the principles were different. The King was a constituent part of Parliament, and no Act of Parliament could be valid without the King's approbation. But the President is not a constituent part of Congress, and an Act of Congress may be valid as law without his signature or assent.

" Calhoun still thought that the uniform practice made the law. . . . And as the Act was to commence its operation only in October, and was not of an urgent character, it was concluded to be the safest course to leave the Act unsigned, and state the facts to Congress

Lincoln, on March 12, 1863, approved a bill after the Congress had adjourned *sine die* on March 4, 1863, the bill having been passed on March 3, 1863 (c. 120, 12 Stat. 820). This action was not left unchallenged. The Judiciary Committee of the House of Representatives made a unanimous report, in response to a resolution of the House, that the Act was not in force.[3] It does not appear that the House acted upon this report. But the Congress soon after passed an Act which referred to the Act of

at their next session."—Memoirs of John Quincy Adams (1875), vol. 6, pp. 379, 380.

[3] The Committee said that the act had been approved by the President "under the belief that the last clause of the section of the Constitution, above quoted, was designed more especially to prevent Congress from enacting laws without the approval of the Executive, which might be done by the passage of bills by the two houses, followed by an adjournment, before the President could examine and return them, were it not for the declaration that in such cases the bills shall not be laws; and did not relate to cases wherein the Executive should approve bills sent to him by Congress within ten days, even though an adjournment should occur before the return of the bills.

"That there is force and plausability in this position, a little reflection will discover to any mind; but the committee cannot receive it as a correct interpretation of the Constitution.

"The ten days' limitation contained in the section above quoted refers to the time during which Congress remains in session, and has no application after. adjournment. Hence if the Executive can hold a bill ten days after adjournment, and then approve it, he can as well hold it ten months before approval. This would render the laws of the country too uncertain, and could not have been intended by the framers of the Constitution.

"The spirit of the Constitution evidently requires the performance of every act necessary to the enactment and approval of laws to be perfect before the adjournment of Congress.

"The committee, therefore, conclude that the act referred to, approved March 12, 1863, is not in force; and in this conclusion the committee are unanimous." H. R. Report No. 108, 38th Cong., 1st Sess., June 11, 1864.

March 12, 1863, as having been approved, and added to its provisions. Act of July 2, 1864, c. 225, 13 Stat. 375.[4] The Act of March 12, 1863, was the subject of several decisions of this Court, and in these no question appears to have been raised as to its validity in view of the time of its approval by the President.[5] President Johnson refused to sign a bill which he received on April 1, 1867, as the Congress had taken a recess from March 30, 1867, to July 3, 1867.[6]

It appears that President Cleveland was urged to approve a bill after the adjournment of the Congress, but he did not do so.[7] President Harrison, acting on the advice of Attorney General Miller (20 Op. A. G. 503), signed a number of bills during a recess of the Congress. Upon the opinion of Attorney General Palmer that the action was constitutional (32 Op. A. G. 225), President Wilson signed several bills after the adjournment *sine die*

[4] Other references to the Act of March 12, 1863, as approved, are found in the Act of July 28, 1866, c. 298, § 8, 14 Stat. 329; Act of July 27, 1868, c. 276, § 3, 15 Stat. 243.

[5] *Mrs. Alexander's Cotton,* 2 Wall. 404, 420, 423; *United States* v. *Anderson,* 9 Wall. 56, 64; *Ex parte Zellner,* 9 Wall. 244, 245; *United States* v. *Padelford,* 9 Wall. 531, 540; *United States* v. *Klein,* 13 Wall. 128; *Carroll* v. *United States, id.,* 151; *Armstrong* v. *United States, id.,* 154; *Pargoud* v. *United States, id.,* 156. See *Hodges* v. *United States,* 18 Ct. Cls. 700; *United States* v. *Weil,* 29 Ct. Cls. 523.

[6] President Johnson filed the bill in the State Department with an endorsement, stating his belief that approval in these circumstances was not authorized by the Constitution. 4 Hinds' Precedents, § 3493. A resolution directing the re-enrollment of the bill was passed by the House of Representatives but not by the Senate. *Id.*

[7] The statement has been made that Attorney General Garland advised President Cleveland that he was without authority to sign bills after Congress had adjourned (see 32 American Law Review, p. 212), but we are informed that there is no record in the Department of Justice of any opinion by Attorney General Garland upon the subject. See 36 Op. A. G. at p. 404.

490

of the second session of the 66th Congress.[8] This prece-
dent was followed in the instant case by President
Hoover, relying upon the opinion of Attorney General
Mitchell that there was no ground for a distinction as to
the President's power in this respect between the case of
adjournment at the close of a session and the final ad-
journment of the Congress.

The authority of the President to approve bills during
a recess of the Congress, but within the time fixed by the
Constitution, has been sustained by this Court. *La Abra
Silver Mining Co.* v. *United States,* 175 U. S. 423. It
appeared in that case that on December 22, 1892, two
days after presentation of the bill to the President, the
Congress had taken a recess until January 4, 1893. The
bill was signed by the President on December 28, 1892. The
Court expressly reserved the question, as one not before
the court, whether the President could approve a bill
" after the final adjournment of Congress for the session."
But the reasoning of the opinion applies with as much
force to the case of an adjournment, whether it is at the
close of a session or is the final adjournment of the Con-
gress, as to the case of a recess for a specified period.

The Court effectively answered the opposing conten-
tion based upon the legislative character of the President's
function in approving or disapproving bills. See *Smiley*
v. *Holm,* 285 U. S. 355. The fact that it is a legislative
function does not mean that it can be performed only
while Congress is in session. The President acts legisla-
tively under the Constitution but he is not a constituent
part of the Congress.[9] In the *La Abra* case the Court said

---

[8] The session adjourned *sine die* on June 5, 1920, 41 Stat. 363,
1639. The following bills were subsequently approved by the Presi-
dent: Act of June 10, 1920, c. 285, 41 Stat. 1063; Acts of June 14,
1920, c. 286, 287, 288, 289, 290 and 291; *id.,* 1077-1079. See 30 Yale
Law Journal, 1.

[9] See Note 2.

(*id.* p. 454) : " It is said that the approval by the President of a bill passed by Congress is not strictly an executive function, but is legislative in its nature; and this view, it is argued, conclusively shows that his approval can legally occur only on a day when both Houses are actually sitting in the performance of legislative functions. Undoubtedly the President when approving bills passed by Congress may be said to participate in the enactment of laws which the Constitution requires him to execute. But that consideration does not determine the question before us. As the Constitution while authorizing the President to perform certain functions of a limited number that are legislative in their general nature does not restrict the exercise of those functions to the particular days on which the two Houses of Congress are actually sitting in the transaction of public business, the court cannot impose such a restriction upon the Executive." From this point of view, and so far as the character of the President's function is concerned, it obviously makes no difference whether the Congress has adjourned *sine die* or to a day named.

The Court's reasoning in the case cited also meets the objection that if the President may approve bills after adjournment, his action would be free of any limitation of time. The constitutional provision does not admit of such a construction. The intention is clearly shown that in any event the President must act within the prescribed ten days, and the opinion in the *La Abra* case is explicit as to the President's duty in this respect. The Court said (*id.,* pp. 453, 454) : " The time within which he [the President] must approve or disapprove a bill is prescribed. If he approve a bill, it is made his duty to sign it. The Constitution is silent as to the time of his signing, except that his approval of a bill duly presented to him—if the bill is to become a law merely by virtue of such approval—must be manifested by his signature within ten

days, Sundays excepted, after the bill has been presented to him. It necessarily results that a bill when so signed becomes from that moment a law. But in order that his refusal or failure to act may not defeat the will of the people as expressed by Congress, if a bill be not approved *and* be not returned to the House in which it originated within that time, it becomes a law in like manner as if it had been signed by him." But if this limitation of time applies to the President's action when the Congress is in recess, it is apparent that the limitation equally governs his action when the Congress has adjourned. The constitutional provision affords no basis for a distinction between the two cases.

There is nothing in the words of the Constitution which prohibits the President from approving bills, within the time limited for his action, because the Congress has adjourned; and the spirit and purpose of the clause in question forbid the implication of such a restriction. The provision that a bill shall not become a law if its return has been prevented by the adjournment of Congress is apposite to bills that are not signed, not to those that are signed. There is no requirement that bills that are signed should be returned. No further action is required by Congress in respect of a bill which has been presented to the President, unless he disapproves it and returns it for reconsideration as the Constitution provides. We may quote again from the opinion in the *La Abra* case (*id.*): " It has properly been the practice of the President to inform Congress by message of his approval of bills, so that the fact may be recorded. But the essential thing to be done in order that a bill may become a law by the approval of the President is that it be signed within the prescribed time after being presented to him. That being done, and as soon as done, whether Congress is informed or not by message from the President of the fact of his approval of it, the bill becomes a law, and is

delivered to the Secretary of State as required by law." [10]

Another objection has been raised that, if the authority of the President to approve bills continues after adjournment of the Congress, an incoming President might approve bills passed during the official term of his predecessor.[11] But it does not follow that because an incoming President, to whom a bill has not been presented by the Congress, cannot approve it, that a continuing President, to whom a bill has been presented by the Congress, must be debarred of his opportunity to give his approval within the time which the Constitution has prescribed.

Regard must be had to the fundamental purpose of the constitutional provision to provide appropriate opportunity for the President to consider the bills presented to him. The importance of maintaining that opportunity unimpaired increases as bills multiply. The Attorney General calls attention to the fact that at the time here in question, that is, between February 28, 1931, and noon of March 4, 1931, 269 bills were presented to the President for his consideration, 184 of which were presented to him during the last twenty-four hours of the session. No possible reason, either suggested by constitutional theory or based upon supposed policy, appears for a construction of the Constitution which would cut down the opportunity of the President to examine and approve bills merely because the Congress has adjourned. No public interest would be conserved by the requirement of hurried and inconsiderate examination of bills in the closing hours of a session, with the result that bills may be approved which on further consideration would be dis-

[10] Compare *Seven Hickory* v. *Ellery,* 103 U. S. 423; *People* v. *Bowen,* 21 N. Y. 517; *State ex rel. Belden* v. *Fagan,* 22 La. Ann. 545; *Solomon* v. *Commissioners,* 41 Ga. 157; *Lankford* v. *Commissioners,* 73 Md. 105; 20 Atl. 1017; 22 Atl. 412.

[11] See opinion of Chief Justice Richardson in *United States* v. *Weil,* 29 Ct. Cls. 523, 549.

approved, or may fail although on such examination they might be found to deserve approval.

In the instant case, the President, to whom the bill was presented, approved it within the time prescribed by the Constitution, and upon that approval it became a law. The question certified is answered in the affirmative.

*Question answered " Yes."*