GreeN, Judge,
delivered the opinion of the court:
The petition shows that this suit is begun to recover $176,665.42 alleged to be due the plaintiff by reason of the refusal of the defendant to pay a claim for plant amortization, dredging, and removal of outboard ways in the amount of $204,665.42, upon which the defendant is entitled to a credit of $28,000. This claim, as the petition "shows, grew out of the suspension by the defendant of a certain contract with the Fleet Corporation, hereinafter referred to as contract No. 456 W. H., for the construction of five wooden hulls, which contract was ordered suspended by the Fleet Corporation and upon which the defendant has paid the damages growing out of the suspension of the contract and denied any liability otherwise.
The plaintiff’s petition states that it brings this suit by virtue of an act of Congress approved March 5, 1931, which reads as follows:
“(Private — No. 503 — 71st Congress)
“(S. 4353)
“An act for the relief of the Orange Car and Steel Company, of Orange, Texas, successor to the Southern Dry Dock and Ship Building Company.
“Be it enacted by the Senate an House of Representatives of the United States of America in Congress assembled, That the Orange Car and Steel Company, a corporation *554 organized under the laws of the State of Texas, with headquarters at Orange, Texas, the successor of the Southern Dry Dock and Ship Building Company and owner of its assets, is hereby authorized to prosecute its alleged claim for plant amortization, dredging, and removal of outboard ways to an amount not exceeding $176,665.42, as provided in article .3 of a certain agreement entered into on the 31st day of December, 1921, between Southern Dry Dock and Ship Building Company,. a corporation organized and existing under the laws of the State of Texas, party of the first' part, and the United States Shipping Board, representing the United States of America, acting by and through the United States Shipping Board Emergency Fleet Corporation, party of the second part, a corporation organized and existing under the laws of the District of Columbia. Jurisdiction is hereby conferred upon the Court of Claims of the United States toi hear and consider such action and to enter decree or judgment against the United States for the amount of such damages, if any, as may be found to be due said Orange Car and Steel Company as successor to said Southern Dry Dock and Ship- Building Company within the limitations above set forth. The right to sue hereby granted- is given notwithstanding any statute of limitation: Provided, however, That such action shall be brought and commenced within six months after this act becomes effective.”
The petition and exhibits attached thereto, which are copies of contracts made between the plaintiff’s predecessor and the Government, fill forty-three pages of printed matter. While the petition purports to set out in a general way the effect of these contracts, the demurrer must be considered and determined upon the petition and the contracts taken together, and where the petition expresses merely a legal conclusion with reference to the effect of the contracts that conclusion must be disregarded. The demurrer will be determined upon the allegations of fact contained in the petition, as appearing from the petition and the copies of the contracts attached thereto and made part thereof.
The essential features of the petition and the contracts can be stated without going to any great length, but where it is said in the statements which follow that the “petition shows” or the “petition alleges” reference is made not only *555 to the petition but to the contracts, as set forth in the exhibits attached thereto.
The petition shows that on July 21, 1917, the Southern Drydock & Shipbuilding Company entered into a contract with the United States Shipping Board Emergency Fleet Corporation, representing the United States, for the construction of five wooden cargo-carrying hulls suitable for cargo-carrying steamers for a consideration of $300,000 per hull, payable in installments; also that this contract contained certain other agreements between the parties which were set out therein.
The petition further shows that afterwards the Fleet Corporation represented to the contractor named above that if it would agree to cancel the contract above referred to and would enter into new contracts for the construction of the hulls on a cost-plus basis, the Fleet Corporation would give the contractor a contract to complete the five ships which were then in the process of construction under the contract first mentioned above and contracts for other and additional ships. The petition further alleges that “by the terms of these proposed contracts the contractor would agree to size and shape the wooden materials and install additional machinery and facilities to carry out th¿ aforesaid purposes, and the owner would agree to amortize or make the contractor whole for all expenditures and investment for plant and facilities in carrying out said contracts.”
The petition shows that the contractor accepted this offer and agreed to cancel the then existing contract and enter into new contracts. There is no direct statement in the petition as to whether any of the propositions and arrangements that are referred to in the foregoing paragraph were made in writing or were merely oral, but a reading of the petition as a whole justifies the conclusion that all of the negotiations and agreements alleged in the preceding paragraph were simply oral, and counsel both for plaintiff and defendant in argument refer to the agreement that is therein alleged to have been made or entered into as being an oral contract. As counsel have submitted the case, it turns on the question of whether this oral contract could be or was modified by the written contract which later and *556 about August 9, 1918, was entered into between the said Southern Drydock & Shipbuilding Company and the Fleet Corporation and is referred to as No. 456 W. H. This contract recited, among other things, that the contractor had by contract dated July 21, 1917, agreed to construct for the Fleet Corporation five wooden hulls, that by reason of changes required to be made by the Fleet Corporation in the performance thereof certain claims for damages had been made by the contractor, and that it was the desire of both parties to cancel the contract of July 21, 1917, and settle all claims thereunder; also toi make a new contract for completion of the work and provide for additional work. This contract of August 9, 1918, went on further to recite that—
“(2) The contractor hereby acknowledges complete reimbursement for all expenditures made and full satisfaction of all payments due it under said contract of July 21, 1917, and/or any order, authorization, agreement, or promise, either verbal or in writing, given or alleged to have been given by the owner or any of its agents or representatives in connection with said contract or the performance thereof.
“ (3) The contractor hereby expressly waives all damages and all claims of every kind and character due it or alleged to be due it under or because of said contract of July 21, 1917, and/or any transactions which occurred in the performance thereof, and hereby releases and discharges the owner from any and all obligations or liabilities under or by reason of said contract.”
The contract of August 9, 1918, contained a number of other agree'ments made by the parties, important between themselves, but not necessary to be set out in stating plaintiff’s case.
The petition further alleges that “ thereafter the owner failed and refused to order or contract for the construction of any further wooden hulls in order to comply with its promise to amortize or repay the contractpr for its investment in plant and facilities,” and the contractor presented its claim-to the Fleet Corporation for damages and for plant amortization in the amount of $204,665.42. The Fleet Corporation paid and settled with the contractor for *557 damages growing out of the' suspension of said contract, but refused to pay the said demand for amortization of plant and facilities. Thereafter, on December 31, 1921, the contractor entered into a settlement agreement with the owner accepting payment for damages due to the suspension of said contract No. 456 W. EL, but reserving its right to prosecute its claim for plant amortization, dredging, and removal of outboard ways, amounting to $204,665.42, less $28,000 allowed in said settlement by way of amortization for depreciation by the Fleet Corporation.
The defendant raises two questions on the demurrer. It is urged first that the act which refers the case to this court for determination was not approved by the President until after the final adjournment of the Congress which passed it, and that it is of no force and effect, for the reason that the Constitution does not authorize the approval of a bill after the final adjournment of Congress.
In the case of Edwards v. United States, 286 U. S. 482, the Supreme Court held in substance that if a bill which had passed Congress was approved by the President within the time prescribed by the Constitution it became a law notwithstanding the fact that such approval was not until after the final adjournment of the Congress which passed it. Following the rule laid down by the Supreme Court, we hold that the act is valid.
The other point made by defendant is that the contract No. 456 W. H. by its express terms ■ acknowledged “complete reimbursement for all expenditures made and full satisfaction of all payments due it (the contractor) under said contract of July 21, 1917, and/or any order, authorization, agreement, or promise, either verbal or in writing, given or alleged to have been given by the owner or any of its agents or representatives in connection with said contract or the performance thereof ”; waived “ all damages and all claims of every kind and character due it, or alleged to be due it, under or because of said contract of July 21, 1917 and released and discharged the Fleet Corporation from any and all obligations or liabilities under or by reason of said contract.” (See paragraphs (2) and (3) of provision *558 I of contract No. 456 W. H. in which the Fleet Corporation is by another special provision thereof called the “ owner.”)
The petition shows that the suit is brought upon an oral contract which preceded the written contract last mentioned and provided for the execution of a written contract concerning which the petition alleges: “ By the terms of these proposed contracts the contractor would agree ” to do certain things, and the owner (the Fleet Corporation) “ would agree to amortize or make the contractor whole for all expenditures and investment for plant and facilities in carrying out said contracts.”
The contention of the defendant is that the oral agreements referred to in the petition were merged in the subsequent written agreement No. 456 W. H., and can not be used to vary the terms of the written contract, nor can a recovery be based thereon standing separately.
We think the defendant is correct in its construction of the law. The plaintiff cites some cases to show that where an oral contract is made to the effect that the parties will subsequently enter into a written contract to carry out its terms and thereafter a written contract is made between the parties effectuating a part and a distinct portion of the oral contract, and no contract is made with reference to the remainder of the matters specified in the oral contract, the party aggrieved by the failure to carry out the remainder of the oral contract may bring suit thereon. But that is not this case. By the contract No. 456 W. H., the parties entered into a sweeping agreement as broad and specific in its terms as it was possible to make it, whereby the plaintiff, as shown by the quotations from said contract set out above, acknowledged complete reimbursement and full satisfaction for all payments due it under the preceding contract or under any verbal order or promise, and waived all damages and claims “ of every kind and character due it or alleged to be due it,” and released and discharged the Fleet Corporation from any and all liabilities under or by reason of said contract. By reason of this provision the oral contract set out in the petition became merged in the written contract and became of no further force and effect.
*559 The demurrer must be sustained and it is ordered that plaintiff’s petition be dismissed.
Whaley, Judge; Williams, Judge; LittletoN, Judge; and Booth, Chief Justice, concur.