465 So.2d 1319 (1985)
FLORIDA OPTOMETRIC ASSOCIATION, Jon S. Jacobs, O.D., and Fred R. Dudley, Appellants/Cross-Appellees,
v.
George FIRESTONE, As Secretary of State of the State of Florida and Bob Graham, Governor of the State of Florida and Florida Society of Ophthalmology, Appellees/Cross-Appellants.
No. AX-391.
District Court of Appeal of Florida, First District.
March 15, 1985.
Leonard A. Carson, James W. Linn and John D.C. Newton, II of Carson & Linn, Tallahassee, for appellants/cross-appellees.
*1320 Carole Joy Barice, Gen. Counsel, Dept. of State, Tallahassee; Richard Collins and Robert W. Goldman of Perkins & Collins, Sydney H. McKenzie, III, Gen. Counsel and Arthur Wiedinger, Jr., Asst. Gen. Counsel, Tallahassee, for appellees/cross-appellants.
ERVIN, Chief Judge.
Appellants appeal an order dismissing with prejudice their petition for writ of mandamus, which sought to compel the Secretary of State of Florida to publish 1983 Senate Bill 168,[1] a bill related to the practice of optometry, as a law of the State of Florida. Cross-appellants[2] appeal the circuit court's assertion of jurisdiction over the subject matter and parties, and its ruling that a petition for writ of mandamus was appropriate for resolution of the substantive question presented. We reverse the order denying the petition for writ of mandamus, but affirm the order insofar as it holds that the lower court had subject matter jurisdiction of the issue.
The facts are undisputed. On May 13, 1983, the Florida Senate passed SB 168, and the bill was passed by the Florida House of Representatives on May 30, 1983. The House and Senate adjourned sine die the 1983 regular session on June 13, 1983. On the following day, June 14, 1983, Governor Graham was presented with SB 168 for his approval or veto, and he vetoed it on June 29, 1983, fifteen days after presentment. During the July 12-13, 1983 special legislative session, the Senate received Governor Graham's veto message. See Article III, Section 8(b), Florida Constitution. The Senate, however, took no further action on SB 168 during the special session, and the Secretary of the Senate later transmitted the vetoed bill to the Secretary of State.
The substantive issue below and on appeal is whether Governor Graham timely vetoed SB 168. That issue involves the interpretation of Article III, Section 8(a) of the Florida Constitution, which states in pertinent part:

Every bill passed by the legislature shall be presented to the governor for his approval and shall become a law if he approves and signs it, or fails to veto it within seven consecutive days after presentation. If during that period or on the seventh day the legislature adjourns sine die or takes a recess of more than thirty days, he shall have fifteen consecutive days from the date of presentation to act on the bill.

(e.s.) Appellants claim that if the governor is presented a bill after adjournment sine die, he has seven days to veto the bill or it automatically becomes law. Appellees, on the other hand, argue that the governor has fifteen days to act on a bill presented to him after adjournment sine die. After receiving evidence and considering oral argument of counsel, the trial court held: It had jurisdiction over the subject matter and parties; a petition for writ of mandamus was appropriate for resolution of the substantive issue; and Governor Graham timely vetoed SB 168, since Article III, Section 8(a) should be interpreted to provide that when a bill is presented after adjournment sine die of the legislature to the governor, he has fifteen days within which to exercise his veto.
Initially, we address the question of jurisdiction. Pursuant to Article V, Section 5(b), Florida Constitution, and Florida Rule of Appellate Procedure 9.030(c)(3), circuit courts have original jurisdiction to issue writs of mandamus. Even though the supreme court has original jurisdiction to issue writs of mandamus to state officers and state agencies, Florida Rule of Appellate *1321 Procedure 9.030(a)(3), that authority is not exclusive and "orderly procedure would require that these matters be brought initially to the attention of a Circuit Judge in the appropriate county." Lyden v. Wainwright, 307 So.2d 258, 259 (Fla. 2d DCA 1974). In the case at bar, the circuit court properly exercised its jurisdiction over the petition and the parties.
We also agree with the trial court's ruling that a petition for writ of mandamus was appropriate here. "In order to show entitlement to the extraordinary writ of mandamus, the petitioner must demonstrate a clear legal right on his part, an indisputable legal duty on the part of respondents, and that no other adequate remedy exists." State, Department of Health and Rehabilitative Services v. Hartsfield, 399 So.2d 1019, 1020 (Fla. 1st DCA 1981). We consider that the Secretary of State has an indisputable legal duty to publish validly enacted laws; a duty imposed upon him by Article IV, Section 4(b) of the Florida Constitution, requiring him to "keep the records of the official acts of the legislative and executive departments." We find additional support for this conclusion in the supreme court's recognition that mandamus is the appropriate remedy for resolution of legal issues  not requiring extensive fact-finding  as to the constitutional validity of several gubernatorial vetoes affecting certain provisions of the General Appropriations Act of 1979.[3]Brown v. Firestone, 382 So.2d 654 (Fla. 1980).
The remaining question is whether another adequate remedy exists. Appellees argue that a declaratory judgment would be an adequate remedy. See Section 86.011, Florida Statutes. In Brown a declaratory judgment would have been inadequate since "the functions of government would have been adversely affected without an immediate determination." 382 So.2d at 662. Although, unlike Brown, the case at bar does not concern a general appropriations act, until this appeal is resolved there will remain lingering uncertainty over the number of days in which the governor is authorized to exercise his veto authority. In our view, an immediate determination is necessary, therefore mandamus is the appropriate remedy.
We now turn to the question of whether the veto in question is constitutionally valid. The answer depends on whether we may accept only the plain meaning of the language stated in Article III, Section 8(a), or instead examine how the executive branch has interpreted it since 1968, the year of its adoption. Under its plain meaning, Article III, Section 8(a) states that the governor ordinarily has seven consecutive days after presentment to take action on a bill. There are two exceptions, which, if they occur during the seven-day period after presentation, operate to extend such period: (1) the legislature's adjourning sine die; and (2) the legislature's recessing more than thirty days. If either of the two events occurs, the governor has an additional eight days to act on a bill; that is, he has a total of fifteen days from the date of presentment to exercise his veto. In the case at bar neither of the two exceptions took place. The Florida Legislature had already adjourned before the bill was presented to the governor for his consideration. Therefore, relying on the plain meaning of the words in Article III, Section 8(a), Governor Graham had only seven days from June 14, 1983 to veto SB 168. Accordingly, on the expiration of the seventh day without his action, or June 21, 1983, the bill automatically became a law.
Veto provisions such as those in Article III, Section 8(a) have three controlling purposes: to insure promptness, give the legislature an opportunity to reconsider vetoed bills, and safeguard the governor's opportunity to consider all bills presented to him. Edwards v. United States, 286 U.S. 482, 486, 52 S.Ct. 627, 628, 76 L.Ed. 1239, 1240 (1932). The importance of the third purpose increases as the number of bills passed typically multiplies near the end of *1322 a legislative session. The record discloses that since 1974, the number of bills presented to the governor in the last six days of each legislative session, and after each session, was consistently in excess of 60 percent of the total number of bills passed during each session. While giving the governor seven instead of fifteen days to review bills presented, after legislative adjournment or recess, may add to the governor's workload, this burden is not so great as to frustrate the governor's opportunity to consider all bills presented.
The record further discloses that all governors since 1968 have interpreted Article III, Section 8(a) to permit fifteen days for veto action on bills presented to them after adjournment sine die. This consistent interpretation has apparently never before been challenged, and the Florida Supreme Court assumed it to be correct in In re Advisory Opinion to the Governor, 374 So.2d 959, 963 (Fla. 1979). The time allotted for a veto, however, was not at issue there and that opinion does not control the case at bar. See also Lee v. Dowda, 155 Fla. 68, 19 So.2d 570, 572 (1944), which states that advisory opinions to the governor "are not binding judicial precedents". Also, the executive construction of Article III, Section 8(a) cannot render nugatory the plain and unambiguous terms of the provision. See Amos v. Moseley, 74 Fla. 555, 77 So. 619, 626 (1917); Sutherland, 2A Statutory Construction § 49.04 (4th ed. 1984). When constitutional provisions "are clear and unambiguous, they are to be read and enforced as written." Plante v. Florida Commission on Ethics, 354 So.2d 87, 89 (Fla. 1st DCA 1977). Moreover, "[i]f the language is clear and not entirely unreasonable or illogical in its operation we have no power to go outside the bounds of the constitutional provision in search of excuses to give a different meaning to words used therein." City of St. Petersburg v. Briley, Wild & Associates, Inc., 239 So.2d 817, 822 (Fla. 1970). Since the words and phrases in Article III, Section 8(a) are unambiguous, we need not resort to the history of the provision. See In re Advisory Opinion to the Governor, 374 So.2d at 964. We must not, however, give effect to the plain meaning of the provision if that would tend to frustrate the intent of the framers and adopters, or lead to absurd results. Id.
In that we consider Article III, Section 8(a) to not reasonably be susceptible to more than one meaning, we conclude the governor's construction is neither conclusive nor persuasive. Cf. State v. Kaufman, 430 So.2d 904 (Fla. 1983); Vinales v. State, 394 So.2d 993 (Fla. 1981). We therefore consider the lower court erred in examining extrinsic evidence as an aid in determining the proper construction of the constitutional provision.
In so holding, we have considered the dissent's reference to Plante v. Smathers, 372 So.2d 933, 936 (Fla. 1979), stating that a court may consider "the people's intent from historical precedent, from the present facts, from common sense, and from an examination of the purpose the provision was intended to accomplish and the evils sought to be prevented." In Plante, the Florida Supreme Court had before it an issue involving the construction of the Sunshine Amendment, Article II, Section 8, Florida Constitution. There a question was raised as to whether a non-incumbent candidate for elective constitutional office who had not qualified as a candidate before July one of an election year was later required to file the public financial disclosure form contemplated by Article II, Section 8(a) and (h) of the Florida Constitution at the time of his qualification as a candidate. Subsection (a) provides that all elected constitutional officers and candidates shall file financial disclosure statements, presumably at the time of qualifying for public office, but does not state so explicitly. Subsection (h), regarding the schedule for filing such financial statements, requires generally that they be filed with the secretary of state by July one of each year.
The supreme court construed subsection (h) as requiring disclosure by incumbent officeholders as of July one annually; the court however construed subsection (a) as *1323 being self-executing in requiring all candidates for elective constitutional offices to file such financial statements with the secretary of the state at the time he or she submits qualifying papers. The court thus resorted to extrinsic evidence to determine the people's intent in view of the fact that subsection (h) was silent in not designating those persons required to file financial statements with the secretary of state on or before July one of each year. We therefore conclude that Plante v. Smathers is factually distinguishable from the case at bar and resort to extrinsic evidence was necessary to determine when non-incumbent officeholders who are candidates for public office are required to file financial disclosure statements.
In the case at bar, by looking only to the clear, unambiguous language in Article III, Section 8(a), we think it obvious that when a bill is presented to the governor after adjournment sine die, the governor has seven days to veto the bill or it automatically becomes law. Because Governor Graham vetoed SB 168 fifteen days after its presentment, his veto had no effect upon a bill which already had become law.
In light of the potential impact of our decision on this state's legislative and executive processes, we certify, pursuant to Florida Rule of Appellate Procedure 9.030(a)(2)(A)(v), the following question to be of great public importance:
WHETHER ARTICLE III, SECTION 8(a), FLORIDA CONSTITUTION, ALLOWS THE GOVERNOR SEVEN OR FIFTEEN CONSECUTIVE DAYS TO ACT ON A BILL PRESENTED TO HIM AFTER THE LEGISLATURE ADJOURNS SINE DIE, AND, IF HE IS ALLOWED ONLY SEVEN DAYS THEREAFTER, SHOULD THE EFFECT OF AN OPINION SO HOLDING HAVE ONLY PROSPECTIVE APPLICATION?
Reversed with directions that the writ issue.
MILLS, J., concurs.
ZEHMER, J., dissents with written opinion.
ZEHMER, Judge, dissenting.
I respectfully dissent. The majority opinion contains a very persuasive analysis of Article III, Section 8(a), of the Florida Constitution, and the principles governing its construction which leaves little room for justifying a contrary result. Perhaps in this instance I may well be accused of shutting my eyes in the presence of clear, relatively unambiguous language, but a sense of practicality compels me to accept the construction on this provision given it by the present and former governors of this state and the circuit court that the governor had fifteen days, not seven, within which to veto the subject bill because it was submitted to him after the close of the legislative session.
It is incumbent on us to discern and effectuate the intent and objective of the constitutional provision and to interpret the language so as to accomplish that intent and purpose. Plante v. Smathers, 372 So.2d 933, 936 (Fla. 1979). Despite the precise language of section 8(a), I believe the intent underlying this section is to afford the governor fifteen days, not just seven, within which to exercise a veto at any time the governor is properly considering a bill and the legislature is not in session. Therefore, I would construe the section as meaning the governor has fifteen days after submission within which to veto a bill any time the legislature adjourns within seven days of submission or prior to the date of submission.
For this reason, I would affirm.
NOTES
[1] SB 168, by amending several sections of Chapter 463, Florida Statutes, would, inter alia, provide for two levels of licensure for optometrists, the "optometrist" and the "board certified optometrists"; authorize board certified optometrists to administer, use and prescribe authorized medicinal drugs; adopt authorized systemic medicinal drug formulary; provide licensure requirements for board certified optometrists; and provide standards of practice for optometrists and board certified optometrists.
[2] The trial court allowed Governor Graham and the Florida Society of Ophthalmology, Inc. to intervene as intervenors-respondents.
[3] Chapter 79-212, Laws of Fla.