**In re** Status of Certain **Tenth Legislature Bills**

Eleventh Northern Marianas
Commonwealth Legislature
and
Office of the Attorney General,
Commonwealth of the Northern Mariana
Islands,
Petitioners
Original Action No. 98-001
Answer to Certified Question
February 18, 1998

Submitted on the Briefs February 13, 1998

Counsel for Legislature (Senate): Stephen C. Woodruff, Saipan

Counsel for Legislature (House): Maya B. Kara, Saipan

Office of the Attorney General: Sally B. Pfund, Acting Attorney General, Saipan

BEFORE: ATALIG, Justice *Pro Tem*; DEMAPAN, Justice *Pro Tem*; WISEMAN, Special Judge

## ISSUES PRESENTED AND STANDARD OF REVIEW

¶1 The sole issue before this Court is whether certain bills which were enacted by the Tenth Commonwealth Legislature and delivered to the newly elected governor, Pedro P. Tenorio, after the organization of the Eleventh Commonwealth Legislature are validly before him for action. We have jurisdiction pursuant to Legislative Initiative No. 10-3 § 11, ratified by the voters on November 1, 1997, and certified by the Board of Elections on December 13, 1997. We review a certified legal question de novo. *Sonoda v. Cabrera*, 1997 MP 5 ¶3, 5 N.M.I. 57.

## FACTS AND PROCEDURAL BACKGROUND

¶2 This dispute arises out of the January 26, 1998, Memorandum from the Office of Attorney General which states that four bills[1] enacted by the Tenth Legislature and

---

[1] The bills include: H.B. No. 10-163, HD3 which allows retirees elected to public office to receive retirement benefits in lieu of salary; H.B. 10-467 which vacates part of the Pachinko Machine Regulations; H.B. 10-239, HD2 which requires life imprisonment for importation of any quantity of crystal 

155

currently pending before Governor Pedro P. Tenorio ("Governor") are "legal nullities" upon which the Governor is without legal authority or power to act.

¶3 House Bill No. 10-163, HD3 was passed in the House of Representatives and the Senate on January 8, 1998. It was transmitted to the Governor on January 13, 1998.

¶4 House Bill No. 10-467 was passed in the House of Representatives on November 13, 1997, and in the Senate on January 8, 1998. It was transmitted to the Governor on January 13, 1998. House Bill No. 10-239, HD2 was passed in the House of Representatives on February 13, 1997, and in the Senate on January 8, 1998. It was transmitted to the Governor on January 13, 1998. All of the house bills were engrossed by the House Clerk and signed by the Speaker of the House of the Tenth Northern Marianas Commonwealth Legislature and given to the House Clerk for transmittal prior to the inauguration of the new administration on January 12, 1998.

¶5 Senate Bill No. 10-76 was passed in the Senate on March 12, 1997, and in the House of Representatives on October 1, 1997. It was engrossed by the Senate Clerk and signed by the President of the Senate of the Tenth Northern Marianas Commonwealth Legislature, and given to the Senate Clerk for transmittal to the Governor prior to January 12, 1998. The bill was transmitted to the Governor on January 13, 1998.[2]

¶6 Both the House of Representatives and the Senate had their final session and adjourned sine die on Thursday, January 8, 1998. The four bills were delivered and received by the Office of the Governor on January 13, 1998.

**ANALYSIS**

¶7 The Commonwealth Constitution provides:

> Every bill enacted shall be signed by the presiding officer of the house in which the bill originated and transmitted to the governor. If the governor signs the bill, it shall become law. If the governor vetoes the bill, it shall be returned to the presiding officer of each house of the legislature with a statement of the reasons for the veto.

N.M.I. Const. art. II, § 7(a) (1986).

---

methamphetamine; and S.B. No. 10-76 which amends the Public Lands and Natural Resources Act of 1997.

[2] The letter of transmittal is dated January 11, 1998. However, since the parties stipulated that the date of transmittal was January 13, 1998. for purpose of our analysis, we will treat this bill the same as the other House Bills.

¶8 Therefore, the Constitution provides that in order to enact legislation, the legislature must: (1) enact the bill; (2) have the bill signed by the presiding officer of the house in which it originated; and (3) transmit the bill to the governor. If the governor signs the bill within the appropriate time, the bill becomes law. If he vetoes the bill, then it is returned to the legislature.

¶9 There is no dispute that the bills were properly enacted and that they were signed by the presiding officer of the house in which the bill originated and that they were transmitted to the governor. The only dispute is whether the transmittal of the bills to the Governor on January 13, 1998, was proper.

¶10 ■ A basic principle of construction is that language must be given its plain meaning. *Camacho v. Northern Marianas Retirement Fund*, 1 N.M.I. 362, 368 (1990). This principle which applies to statutory construction also applies in cases of constitutional construction. *Id*. This Court will apply the plain, commonly understood meaning of constitutional language unless there is evidence that a contrary meaning was intended. *Id*.

¶11 The Commonwealth Constitution does not impose a requirement on how the bills should be transmitted to the governor. There is no requirement that the bill must be transmitted by the same legislature which enacted it, nor is there a requirement that the governor who is serving at the time of the bill's enactment must be the same governor who acts on it. There is also nothing in the Constitution which prohibits delivery to the governor after the legislature is organized or requiring delivery in any particular manner, within any specified time, or prior to the seating of a new legislature.

¶12 ■ Since our Constitution does not specify the method and time of transmittal of bills to the governor, we must look to the intent of the framers of the Constitution. *Aldan-Pierce v. Mafnas*, 2 N.M.I. 122, 163 (1991). We find that the most logical statutory construction is to allow a reasonable time after the passage of the bills in which to transmit the bills to the governor.

> Where there is no express constitutional provision [with respect to method and time of presentment] most courts require that bills be presented to the executive with reasonable promptness after adjournment and in a manner that accords with reasonable business practice. Reasonable diligence in preparing bills for transmission and actually transmitting them to the custody of the chief executive's office should fulfill the constitutional requirement.

SUTHERLAND, STATUTORY CONSTRUCTION § 16.01 (5th ed. 1994).

¶13 Both the House of Representatives and the Senate had their final session and adjourned sine die on Thursday,

January 8, 1998. Friday, January 9, 1998, was Covenant Day, a legal holiday. January 10, 1998, and January 11, 1998, were Saturday and Sunday, respectively, days in which the legislature and the governor's office were closed. Monday, January 12, 1998, was Inauguration Day, a government holiday. All four bills were delivered and received by the Office of the Governor on January 13, 1998.[3] The bills were delivered on the first day of business following adjournment and a four-day holiday weekend. Therefore, we find that the legislature did transmit the bills to the governor with "reasonable diligence."

¶14 ■ In addition, the Attorney General's argument that the transmittal was improper is flawed. Courts have held that the chief executive of a government may act upon legislation after the legislative body has concluded its legislative business and adjourned. *See Edwards v. United States*, 286 U.S. 482, 52 S.Ct. 627, 76 L.Ed. 1239 (1932); *La Abra Silver Mining Co. v. United States*, 175 U.S. 423, 20 S.Ct. 168, 44 L.Ed.223 (1889). The parties agree this is true.

¶15 ■ However, the Attorney General's Office makes a distinction between the adjournment of the legislature and the termination of the continuous body of the legislature. "The legislature shall be a continuous body for the two years . . . ." N.M.I. Const., art. II, §13 (1994). We find that there is no such distinction. There is no legal significance between the adjournment sine die of the legislature and the termination of the continuous body of the legislature. In both cases, neither legislature can reconvene until the next legislature has been organized.

¶16 All bills which were pending in the Tenth Legislature "died" after final adjournment. However in this case, the four bills had been signed, engrossed and were in the process of being transmitted. Therefore, the bills were final and not pending legislation and not affected by the adjournment. The transmittal of the bills was ministerial in nature and had nothing to do with the enactment of the legislation. *See United States v. Kapsalis*, 214 F.2d 677 (7th Cir. 1954). The only issue is whether the employees of the Legislative Bureau can transmit a bill to the governor after the legislature has adjourned sine die and the legislature has expired. Since we find no distinction between the adjournment and the expiration of the term, we find that the transmittal of the bills was proper.

### CONCLUSION

¶17 ■ Based on the reasoning stated above, we find the bills which were enacted by the Tenth Commonwealth Legislature and signed by the appropriate presiding officers prior to the organization of the Eleventh Commonwealth Legislature and delivered to Governor Pedro P. Tenorio after the organization of the Eleventh Commonwealth Legislature are validly before him for action.

---

[3] We find that the transmittal of Senate Bill No. 10-76 on January 13, 1998, was not unreasonable.