OFFICE OF THE ATTORNEY GENERAL
State of California

JOHN K. VAN DE KAMP
Attorney General

---

| | |
|---|---|
| OPINION<br><br>of<br><br>JOHN K. VAN DE KAMP<br>Attorney General<br><br>RODNEY O. LILYQUIST<br>Deputy Attorney General | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: |

No. 90-501

OCTOBER 25, 1990

---

THE HONORABLE MARIAN BERGESON, MEMBER, CALIFORNIA SENATE, has requested an opinion on the following question:

Do in lieu taxes, mitigation revenues, and tax increment funds given by a redevelopment agency to a school district pursuant to Health and Safety Code sections 33401 and 33676 constitute "property tax revenue" required to be deducted under Education Code section 42238 in computing the amount of a school district's state general aid?

CONCLUSION

In lieu taxes, mitigation revenues, and tax increment funds given by a redevelopment agency to a school district pursuant to Health and Safety Code sections 33401 and 33676 do not constitute "property tax revenue" required to be deducted under Education Code section 42238 in computing the amount of a school district's state general aid.

ANALYSIS

School districts obtain funds from numerous sources and for various general and specific purposes. One major source of funds for a district is the state, and under one of the state's programs, school districts receive general purpose funds pursuant to a complex formula set forth in Education Code section 42238. (See 72 Ops.Cal.Atty.Gen. 205 (1989).) Part of the calculations in arriving at the net amount given by the state under this particular statute involves subtracting money received by a district from specified sources. Education Code section 42238, subdivision (h) provides:

"The Superintendent of Public Instruction shall apportion to each school district the amount determined in this section less the sum of:

"(1) The District's property tax revenue received pursuant to Chapter 3 (commencing with Section 75) and Chapter 6 (commencing with Section 95) of Part 0.5 of the Revenue and Taxation Code.

1. 90-501

"(2) The amount, if any, received pursuant to Part 18.5 (commencing with Section 38101) of the Revenue and Taxation Code.

"(3) The amount, if any, received pursuant to Chapter 3 (commencing with Section 16140) of the Government Code.

"(4) Prior years taxes and taxes on the unsecured roll.

"(5) Fifty percent of the amount received pursuant to Section 41603.

"(6) The amount of motor vehicle license fees distributed pursuant to Section 11003.4 of the Revenue and Taxation Code."

The question presented for resolution is whether funds received by a school district from a redevelopment agency pursuant to the provisions of Health and Safety Code sections 33401 and 33676 constitute "property tax revenue" for purposes of deduction under Education Code section 42238, subdivision (h)(1).[1]  We conclude that they do not.

Under the Community Redevelopment Law (Health & Saf. Code, §§ 33000-33855), redevelopment agencies are formed in communities with the goals of "(1) the creation of physical, social, economic, and environmental conditions to remove and prevent the recurrence of blight; (2) the creation of jobs and low-to-moderate income housing; and (3) the attraction of private investment towards these ends.  [Citation.]" (*Marek* v. *Napa Community Redevelopment Agency* (1988) 46 Cal.3d 1070, 1082.)  A redevelopment agency prepares a detailed plan for a project area and is "endowed with broad powers to acquire property through purchase and condemnation (§ 33391) and to `[m]ake and execute contracts and other instruments necessary' to complete redevelopment projects (§ 33125, subd. (c))." (*Ibid.*)

As for the financing of a redevelopment agency's projects, the Court of Appeal explained in *Bell Redevelopment Agency* v. *Woosley* (1985) 169 Cal.App.3d 24, 27:

"Though an Agency is given broad powers to implement this plan, it does not have the power nor ability to levy a tax to finance these efforts. (*Huntington Park Redevelopment Agency* v. *Martin* (1985) 38 Cal.3d 100, 106; 56 Ops.Cal.Atty.Gen. 464, 469 (1973).)  Instead, the Agency obtains the funds needed to acquire property and make improvements by accepting financial assistance from any public or private source, borrowing money, and issuing bonds.  Incurrence of debt is by far the most common method utilized by an Agency.  This is done through the issuance of `tax allocation bonds.'  The primary source of repayment of this indebtedness is `tax increments' received by the agency from governmental taxing agencies.  The mechanics of tax increment financing was described in *Redevelopment Agency of San Bernardino* v. *County of San Bernardino* (1978) 21 Cal.3d 255, 259. `[I]f, after a redevelopment project has been approved, the assessed valuation of taxable property in the project increases, the taxes levied on such property in the project area are divided between the taxing agency and the redevelopment agency.  The taxing agency receives the same amount of money it would have realized under the assessed valuation existing at the time the project was approved, while the additional money

_____

[1]The other deduction provisions concern revenues received under such statutory schemes as the Timber Yield Tax Law program and Williamson Act open space land subvention program. (See 72 Ops.Cal.Atty.Gen. 205, 207 (1989).)

resulting from the rise in assessed valuation is placed in a special fund for repayment of indebtedness incurred in financing the project.' (Italics in original.) The increase in assessed valuation occurs because of the new construction and revitalization in the project area. Once the debt is paid, the additional tax revenues revert back to the taxing agency. The Legislature devised this financing scheme so that redevelopment would largely pay for itself." (Fn. omitted.)

With this redevelopment law background in mind, we look first to whether "in lieu taxes" are subject to deduction under Education Code section 42238. A redevelopment agency may give "an amount of money in lieu of taxes" to a school district with respect to property that the agency owns in a redevelopment project area.[2] Health and Safety Code section 33401, subdivision (a) provides in part:

"The agency may in any year during which it owns property in a redevelopment project pay directly to any city, county, city and county, district, including, but not limited to, a school district, or other public corporation for whose benefit a tax would have been levied upon the property had it not been exempt, an amount of money in lieu of taxes."

It is apparent that these "in lieu taxes" do not constitute "property tax revenue" levied upon the subject property, and moreover they are not "received pursuant to . . . the Revenue and Taxation Code." (Ed. Code, § 42238, subd. (h)(1).) They must come from some other source (since the property is exempt) and were never derived from or had the character of property taxes collected or allocated with respect to the redevelopment agency's property. The statutory language for making the deduction under the Education Code provision is not met by these funds received pursuant to Health and Safety Code section 33401, subdivision (a).

It is evident, however, that these funds are intended by the Legislature to replace property tax revenues that would otherwise be "lost" by the school district due to the redevelopment agency's ownership of the property. By replacing the tax revenues without making the deduction under Education Code section 42238, a school district will receive an economic benefit with little apparent purpose. Did the Legislature intend to grant a "windfall" to a school district merely because a parcel of real property is owned by a redevelopment agency? We have found nothing in the legislative histories of these statutes to answer this question.

In these circumstances it is not our function to speculate concerning whether a legislative oversight has occurred. "If the words of the statute are clear, the court should not add to or alter them to accomplish a purpose that does not appear on the face of the statute or from its legislative history." (*People* v. *Knowles* (1950) 35 Cal.2d 175, 183; accord, *Schmidt* v. *Superior Court* (1987) 43 Cal.3d 1060, 1066; *California Teachers Assn.* v. *San Diego Community College Dist.* (1981) 28 Cal.3d 692, 298.)

Here the requirements for making a deduction under Education Code section 42238, subdivision (h) are clear. We have previously observed that the statutory language is narrowly drawn. "In this subdivision, not all sources of revenue that a district might receive under various statutory schemes have been included, for the Legislature has been careful to particularize the types of revenues which are to be included." (72 Ops.Cal.Atty.Gen. 205, 207-208 (1989).) Funds

---

[2]Property owned by the state or a local government is exempt from property taxation. (Cal. Const., art. XIII, § 3, subds. (a), (b).)

received by a school district under the terms of Health and Safety Code section 33401, subdivision (a) are not "property tax revenue received pursuant to . . . the Revenue and Taxation Code."

As for "mitigation revenues" received by a school district, Health and Safety Code section 33401, subdivision (b) states in part:

"The agency may also pay to any taxing agency with territory located within a project area other than the community which has adopted the project, any amounts of money which the agency has found are necessary and appropriate to alleviate any financial burden or detriment caused to any taxing agency by a redevelopment project. The payments to a taxing agency in any single year shall not exceed the amount of property tax revenues which would have been received by that taxing agency if all the property tax revenues from the project area had been allocated to all the affected taxing agencies without regard to the division of taxes required by Section 33670 . . . ."

Health and Safety Code section 33670 states in turn:

"Any redevelopment plan may contain a provision that taxes, if any, levied upon taxable property in a redevelopment project each year by or for the benefit of the State of California, any city, county, city and county, district, or other public corporation (hereinafter sometimes called `taxing agencies') after the effective date of the ordinance approving the redevelopment plan, shall be divided as follows:

"(a) That portion of the taxes which would be produced by the rate upon which the tax is levied each year by or for each of the taxing agencies upon the total sum of the assessed value of the taxable property in the redevelopment project as shown upon the assessment roll used in connection with the taxation of that property by the taxing agency, last equalized prior to the effective date of the ordinance, shall be allocated to and when collected shall be paid to the respective taxing agencies as taxes by or for the taxing agencies on all other property are paid . . . and

"(b) . . . that portion of the levied taxes each year in excess of that amount shall be allocated to and when collected shall be paid into a special fund of the redevelopment agency to pay the principal of and interest on loans, moneys advanced to, or indebtedness (whether funded, refunded, assumed, or otherwise) incurred by the redevelopment agency to finance or refinance, in whole or in part, the redevelopment project. . . ."

While mitigation revenues given to a school district as a "taxing agency" under Health and Safety Code section 33401 have a "cap" measured by the amount of property taxes levied against property in the project area, they are not necessarily generated by the levying of property taxes. The mitigation revenues may come from any number of other sources available to a redevelopment agency.

More importantly, as with the in lieu taxes, mitigation revenues simply are not "property tax revenue received [by the school district] pursuant to . . . the Revenue and Taxation Code." (Ed.Code, § 42238, subd. (h)(1).) Even if the revenues were originally generated by the school district and collected as property taxes, they were initially allocated to the redevelopment agency. It is not the redevelopment agency, however, that must "receive" the property tax revenue in order to qualify for the deduction under the statutory language; rather, it is property tax revenue

received by the <u>school district</u> pursuant to the Revenue and Taxation Code that is subject to deduction.

As with the in lieu taxes, we have found nothing in the legislative histories of the relevant statutes suggesting that the express language of Education Code section 42238 should be ignored. Requiring the mitigation revenues to be deducted would run counter to their purpose of alleviating "financial . . . detriment caused . . . by a redevelopment project." (Health & Saf. Code, § 33401, subd. (b).) We are constrained to follow the terms of the statutes as they are written and in light of their purposes. Mitigation revenues received by a school district under the provisions of Health and Safety Code section 33401, subdivision (b) are not deductible as "property tax revenue received pursuant to . . . the Revenue and Taxation Code."

Finally, with respect to "tax increment funds," Health and Safety Code section 33676, subdivision (a) provides:

"Prior to the adoption by the legislative body of a redevelopment plan providing for tax-increment financing pursuant to Section 33670, and unless an agreement is entered into or payments are otherwise distributed by the agency in accordance with Section 33401, any affected taxing agency may elect, and every school and community college district shall elect, to be allocated, in addition to the portion of taxes allocated to the affected taxing agency pursuant to subdivision (a) of Section 33670, all or any portion of the tax revenues allocated to the agency pursuant to subdivision (b) of Section 33670 . . . ."[3]

Here, again, the only issue is whether tax increment funds are "received" by a <u>school district</u> "pursuant to . . . the Revenue and Taxation Code" within the meaning of the Education Code provision. Although the school district may be considered to be the levying tax agency (see *Huntington Park Redevelopment Agency* v. *Martin* (1985) 38 Cal.3d 100, 106-107; *Bell Community Redevelopment Agency* v. *Woosley, supra,* 169 Cal.App.3d 24, 32-33), it is the redevelopment agency that is allocated and "receives" this portion of the property tax funds. We need not decide whether these revenues lose their "tax" character when placed in the possession of a redevelopment agency; it is sufficient to point out that they are not transferred to a school district pursuant to the Revenue and Taxation Code. It is other statutory authority contained in the Health and Safety Code that furnishes the basis for the allocation of funds from the redevelopment agency to the school district.

In answer to the question presented, therefore, we conclude that in lieu taxes, mitigation revenues, and tax increment funds given by a redevelopment agency to a school district pursuant to Health and Safety Code sections 33401 and 33676 do not constitute "property tax revenue" required to be deducted under Education Code section 42238 in computing the amount of a school district's state general aid.

---

[3]A redevelopment agency may also under appropriate circumstances "pay all or part of the value of the land for and the cost of the installation and construction of any building, facility, structure, or other improvement which is publicly owned" (Health & Saf. Code, § 33445), and "any school district may enter into an agreement with an agency under which the agency shall construct, or cause to be constructed, a building or buildings to be used by the district" (Health & Saf. Code, § 33446). Health and Safety Code section 33445.5 additionally authorizes the payment of funds by a redevelopment agency to a school district pursuant to specified conditions for redevelopment plans adopted prior to January 1, 1984.

* * * * *

* * * * *